UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Case No. 24bk03475 |
| Peter John Snisko, | ) | |
| | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| Peter John Snisko, | ) | |
| | ) | |
| Plaintiff, | ) | Adversary No. 25ap00398 |
| | ) | |
| v. | ) | Judge Timothy A. Barnes |
| | ) | |
| BMO Harris, N.A., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

The matter before the court comes on for consideration on the Motion of Defendant BMO Bank, N.A., to Dismiss Amended Adversary Complaint and attached to it the Memorandum in Support of Defendant BMO Harris Bank, N.A.'s Motion to Dismiss Amended Adversary Complaint [Adv. Dkt. No. 17] (together, the "<u>Motion to Dismiss</u>"), filed by BMO Harris Bank, N.A. ("<u>BMO</u>") in the above-captioned adversary proceeding (the "<u>Adversary Proceeding</u>").[1]  In the Motion to Dismiss, BMO seeks to dismiss the Debtor Peter J. Snisko's Amended Adversary Complaint [Adv. Dkt. No. 13] (the "<u>Complaint</u>") filed by the plaintiff-debtor, Peter Snisko (the "<u>Debtor</u>").

The Motion to Dismiss seeks dismissal of all five counts of the Complaint based on the jurisdictional limitations imposed by the *Rooker-Feldman* doctrine and on the theory that *res judicata* bars the causes of action.  For the reasons more fully set forth below, the court agrees.  The matters alleged in Counts II, III and IV of the Complaint either ask the court to sit in judgment over what the state court has done in the matter below or to reach different conclusions on matters that have been heard and determined by the same.  Each is barred by either or both of the *Rooker-Feldman* doctrine or *res judicata*.  Counts I and V, while not barred by either the *Rooker-Feldman* doctrine or *res*

---

[1]     References to docket entries in the Adversary Proceeding will be noted as "Adv. Dkt. No. ___."  References to docket entries in the underlying bankruptcy case, *In re Peter John Snisko*, Case No. 24bk03475 (Bankr. N.D. Ill. filed March 11, 2024) (Barnes, J.), will be noted as "Dkt. No. ___."

*judicata*, are both moot by the inability to render relief.  As a result, the Motion to Dismiss will be granted and the Complaint will be dismissed.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code.  28 U.S.C. § 1334(a).  The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code.  28 U.S.C. § 1334(b).  District courts may refer these cases to the bankruptcy courts for their districts.  28 U.S.C. § 157(a).  In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois.  N.D. Ill. Internal Operating Procedure 15(a).

A judge of the bankruptcy court to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(1).  Such judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code.  28 U.S.C. § 157(b)(3).  As to the former, the judge may hear and determine such matters.  28 U.S.C. § 157(b)(1).  As to the latter, the judge may hear the matters but may not decide them without the consent of the parties.  28 U.S.C. §§ 157(b)(1), (c).  For matters only related to a bankruptcy case, absent consent, the judge must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a judge of the bankruptcy court must also have constitutional authority to hear and determine a matter.  *Stern v. Marshall*, 564 U.S. 464 (2011).  Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy judge hearing and determining the matter.  *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 669 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

Count I is based on violation of the automatic stay under section 362 of the Bankruptcy Code.  A request for relief related to section 362 arises under title 11 and in cases under title 11, and bankruptcy courts have jurisdiction to hear and enter orders on such matters.  Count II is based on sections 502 and 506 of the Bankruptcy Code.  Proceedings to determine the validity and amount of secured claims are core proceedings.  28 U.S.C. § 157(b)(2)(K).  Count III and Count IV are based on declaratory judgment and "[b]ankruptcy courts are among the federal courts that may grant declaratory relief under authority of the Declaratory Judgment Act."  *In re Brinson*, 485 B.R. 890, 903 (Bankr. N.D. Ill. 2013) (Schmetterer, J.).  Count V seeks injunctive relief based on section 105 of the Bankruptcy Code and such relief arises under title 11 and in cases under title 11.  *See In re Caesars Ent. Operating Co., Inc.*, 808 F.3d 1186, 1188 (7th Cir. 2015).

It follows that a motion to dismiss such actions is also a matter within the bankruptcy court's jurisdiction and constitutional authority.  Further, each of the parties has either expressly or

2

impliedly consented to the undersigned's exercise of authority over this matter and have not contested the authority of the undersigned or this court in entering final orders in this matter.

As a result, there exists statutory authority and constitutional authority to hear and enter final judgment on the Motion to Dismiss and it is within this court's jurisdiction, subject to a nuanced jurisdictional issue addressed in more detail below.[2]

BACKGROUND

The Debtor through the Complaint seeks relief related to an underlying foreclosure action commenced by BMO and currently pending before the Chancery Division of the Circuit Court of Cook County (the "Chancery Court"), styled as *BMO Bank, N.A. v. Peter Snisko; Unknown Owners and Non- Record Claimants; Greenwood Park Condominium Association*, Case No. 2022CH03330 (Cir. Ct. Cook County) (the "Chancery Action"). The Chancery Action was commenced on April 12, 2022, after the Debtor defaulted on a loan secured by a mortgage on the property located at 8667 Josephine St, Unit D, Des Plaines, Illinois 60016 (the "Property").

The Chancery Action proceeded for almost two years until March 11, 2024, when the Debtor filed a chapter 13 bankruptcy petition and commenced the above-captioned bankruptcy case. Official Form 101, Voluntary Petition for Individuals Filing for Bankruptcy [Dkt. No. 1]. As a result, and by operation of section 362 of the Bankruptcy Code, the Chancery Action was stayed. 11 U.S.C. § 362(a).

Subsequently on November 21, 2024, on motion of BMO, the stay was modified so as to not restrain it from pursuing *in rem* non-bankruptcy remedies as to the Property. Order on Creditor's Motion for Relief from Automatic Stay (First Mortgage) [Dkt. No. 88] (the "Stay Relief Order"). The Stay Relief Order provided that "[t]he stay is modified so as not to restrain [BMO] from pursing *in rem* non-bankruptcy remedies as to 8667 Josephine St, Unit D, Des Plaines, IL 60016." BMO then proceeded with the Chancery Action as the Stay Relief Order permitted.

On July 3, 2025, BMO filed numerous motions in the Chancery Action related to the defendants named therein. The motions relevant to the Debtor include the (1) Motion for Entry of Judgment of Foreclosure and Sale; (2) Motion to Appoint Selling Officer; and (3) Motion for Summary Judgment (together, the "BMO Chancery Motions"). Compl., Group Exh. F.

On August 1, 2025, the Chancery Court entered orders on the BMO Chancery Motions, including the (1) Judgment for Foreclosure and Sale, *id.* (the "Foreclosure Judgment"); (2) Order Appointing Selling Officer; and (3) Order of Summary Judgment. *Id.* Notice of the Foreclosure Judgment was served on the Debtor by the Cook County Clerk. Compl., Exh. I. In the Foreclosure Judgment, the Chancery Court rendered judgment in a total amount of $139,883.86 (the "Judgment Award"). Compl., Group Exh. F.

As a result of the orders entered by the Chancery Court, the Debtor filed with the Chancery Court the Defendant Peter J. Snisko's 5/2-1301 Motion to Vacate the August 1rst [sic], 2025 Order of Default and Judgment of Foreclosure on December 8, 2025, and attached to it a memorandum in

---

[2]     There remains one limited jurisdictional issue presented here that merits further discussion and will be taken up as part of the discussion on the Motion to Dismiss, below.

support (together, the "<u>Motion to Vacate</u>").  The Motion to Vacate sought to vacate the Foreclosure Judgment, among other relief.  After the Motion to Vacate was filed but prior to presentment on it, a judicial sale of the Property occurred on December 17, 2025.

On January 13, 2026, the Chancery Court held a hearing on the Motion to Vacate (the "<u>Chancery Hearing</u>").  At the Chancery Hearing, the Chancery Court denied the Motion to Vacate.  Thereafter, on February 13, 2026, the Debtor filed with the Chancery Court the Defendant Peter J. Snisko's 5/2-1301 Motion to Vacate the August 1rst [sic], 2025 Order of Default and Judgment of Foreclosure, and attached to it a memorandum in support, seeking to have the Chancery Court reconsider its earlier ruling on the Motion to Vacate at the Chancery Hearing and to vacate the Foreclosure Judgment, among other relief (the "<u>Motion for Reconsideration</u>").[3]

The Chancery Court ruled on the Motion for Reconsideration in the Order it entered on March 23, 2026, concomitant with the Order Confirming Report of Sale and Distribution, and for Possession (together, the "<u>Order Confirming Sale</u>").  The Order Confirming Sale overruled the Debtor's objections, denied the Motion for Reconsideration and approved and confirmed the sale of the Property.

On April 22, 2026, before the deadline to appeal the Chancery Court's March 23rd rulings, the Debtor filed its Notice of Appeal in the Chancery Action.  The appeal was rejected for a formatting deficiency.  Accordingly, on April 27, 2026, the Debtor file its Amended Notice of Appeal and attached to it Defendant Peter J. Snisko's Motion to Establish the Effective Filing Date Pursuant to Illinois Supreme Court Rule 9(d) (the "<u>Correction Motion</u>").  According to the Debtor, the Correction Motion was intended to correct the formatting deficiency and to have the appeal deemed timely.  A hearing on the Correction Motion and the Amended Notice of Appeal was scheduled before the Chancery Court on May 22, 2026.  On that day, the Debtor filed with the Chancery Court a Motion to Stay the Order of Possession, with a hearing on said motion scheduled for June 16, 2026.

PROCEDURAL HISTORY

Throughout the foregoing, the Debtor took a variety of actions before this court, each of which BMO opposed.

The Debtor initiated the Adversary Proceeding by filing the Debtor Peter Snisko's Third Adversary Complaint [Adv. Dkt. No. 1] (the "<u>Original Complaint</u>") on December 17, 2025, the same day as the judicial sale of the Property.  Although titled the third adversary complaint, it was in fact the first filed in the Adversary Proceeding.  On January 16, 2026, BMO filed an initial motion to dismiss that complaint and, as a result, the Debtor requested to amend the Original Complaint.  After leave was granted, the Debtor amended the Original Complaint by filing the Complaint before

---

[3]  Although the Motion for Reconsideration has the same title as the earlier Motion to Vacate, the specific relief sought is for reconsideration, as made clear by the memorandum in support attached to it and titled Defendant Peter J. Snisko's Memorandum in Support of his 5/2–1203 Motion to Have the Court Reconsider it's [sic] January 1, 2026, Ruling and Order Denying the Defendant Peter J. Snisko Motion to Vacate the August 1rst [sic], 2025 Order of Default and Judgment of Foreclosure.

4

the court today.  Though that Complaint was late, the court nonetheless considers it here as if timely-filed.

As a result, the court set briefing on the Complaint so as to allow BMO to file a new motion to dismiss.  *See* [Scheduling] Order [Adv. Dkt. No. 14] (the "Scheduling Order").  In addition to setting a deadline for the filing of the Motion to Dismiss, a response by the Debtor and a reply by BMO, the Scheduling Order set May 14, 2026, as a hearing for the court to rule on the filings (the "Initial Hearing").

BMO timely filed the Motion to Dismiss on March 19, 2026.  The Debtor then timely filed the Plaintiff Peter J. Snisko's Response and Objection to Defendant BMO Harris Bank NA's Motion to Dismiss his Adversary Complaint [Adv. Dkt. No. 18] (the "Response") on April 16, 2026.  Thereafter, BMO filed the Reply to Plaintiff's Response to Motion to Dismiss Adversary (Docket # 18) [Adv. Dkt. No. 19] (the "Reply") on April 29, 2026.

Though the Motion to Dismiss was then fully briefed and ripe for adjudication under the Scheduling Order, the Debtor, on the day of the Initial Hearing and without leave to do so, filed the Plaintiff/Debtor's Notice of Supplemental Authority and Motion to Supplement his Adversary Response to Defendant's Motion to Dismiss [Adv. Dkt. No 20] ("Debtor's Supplement").  The purpose of the Debtor's Supplement was apparently to make the court aware of and make argument with respect to the filing of the Amended Notice of Appeal in the state court.

As a result of the Debtor's late and unauthorized filing, the court allowed BMO to file a response to Debtor's Supplement and continued the hearing to July 2, 2026.  BMO timely filed the Response to Supplement Authority and Motion to Supplement Adversary Response [Adv. Dkt. No. 27] and the matter was, once again, fully briefed and ready for ruling.  On July 2, 2026, the court struck a further hearing on the matter and took the filings under advisement.[4]

THE COMPLAINT

The Complaint consists of five counts seeking to have this court either directly intervene in the Chancery Action or grant relief connected to the Chancery Action.  The five Counts may be summarized as follows:

---

[4]      Each of the parties had ample opportunity to address the court in their filings and made their arguments at numerous oral hearings preceding the one that was struck.  Though the Debtor's counsel believed he was entitled to address the court in yet an additional oral hearing, that is not the case.  "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 551, 552 (1965)).  The Bankruptcy Code itself recognizes that there exist circumstances when, where the Code states that the court's authority occurs after notice and a hearing, such an opportunity to be heard does not require an oral hearing.  11 U.S.C. § 102(1)(B).

As the District Court has noted, a ruling on a motion to dismiss may be "based on written materials alone," *Dixon v. Gatzke*, 790 F. Supp. 3d 679, 691 (N.D. Ill. 2025), and no oral hearing is required "when the issue is 'sharply focused and easily documented.'"  *Alexander v. Kennedy-King Coll.*, Case No. 88 C 2117, 1990 WL 179691, at *5 (N.D. Ill. Nov. 2, 1990).  Such is the issue here.  The Debtor has been afforded an opportunity at a meaningful time and in a meaningful manner through his filings.  As the issue is sharply focused and easily documented, the court's ruling may be based on the written materials alone.

Count I:  As the Debtor's equity in the Property remains property of the Debtor's bankruptcy estate, any attempt by BMO to sell such equity is an unauthorized act against property of the estate and is a willful violation of the automatic stay under section 362(a)(4);

Count II:  The Judgment Award is incorrect and fails to account for post-petition payments made by the Debtor and, as a result, this court should determine the true, accurate amount of the secured claim;

Count III:  The Chancery Court's orders are void *ab initio* as the Chancery Court lacked personal jurisdiction over the Debtor because of improper notice and service;

Count IV:  The Chancery Court's orders are unenforceable due to violations of constitutional protections, including due process; and

Count V[5]:  Because of the foregoing, this court should enjoin the Chancery Court from further action.

The core argument presented by BMO in each of its filings is, simply put, that the Debtor is barred from raising the issues in the Complaint before this court either by the jurisdictional limitations imposed by the *Rooker-Feldman* doctrine or by the preclusive effect of *res judicata*.  For the reasons discussed below, the court agrees.

DISCUSSION

What is implicated by the facts of the Complaint, and argued by BMO in the Motion to Dismiss, is whether this court has subject matter jurisdiction over the Debtor's federal action and, even if it does, whether the prior rulings entered by the Chancery Court bind this court.

There can be little question that Count I, as set forth above, is purely based in the Bankruptcy Code and is not precluded in any fashion by either *Rooker-Feldman* or *res judicata*.  It will be discussed independently below.  By the same token, Count V seeks injunctive relief and is more in the nature of a remedy than of an independent cause of action.  It would not be precluded in any fashion by either *Rooker-Feldman* or *res judicata*.  It too will be discussed independently below.  As to the remaining Counts, however, Counts II-IV, simply put, the court must first determine whether the limitation imposed by the *Rooker-Feldman* doctrine is applicable here.  If no limitation exists, then the court must determine whether the Debtor's claims are barred by *res judicata*.

Further, the court must answer the following question:  Which of the Chancery Court's orders should be considered, the Foreclosure Judgment, the Order Confirming Sale, or both?  As discussed below, there is Seventh Circuit case law that calls into question whether a foreclosure judgment applies for the purposes of the *Rooker-Feldman* doctrine.  Of greater concern is, however, the parallel proceeding rule.  As the Supreme Court has stated, a litigant can raise the same claim in state court as in federal court, so long as a final judgment has not been reached.  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005) ("When there is parallel state and federal litigation,

---

[5]     Count V is incorrectly titled as a second Count IV.  In referring to Count V, the court therefore means the second of the two Count IVs.

6

*Rooker–Feldman* is not triggered simply by the entry of judgment in state court."). Thus, while the Foreclosure Judgment was entered in the absence of a parallel proceeding, the Order Confirming Sale was not. While the entry of the Order Confirming Sale occurred after this court had granted relief from stay, Stay Relief Order, relief from stay is procedural and not jurisdictional. The court's exclusive jurisdiction over assets of a debtor and her estate remains governed by title 28 of the United States Code. 28 U.S.C. § 1334(e). As a result, this court did not cede its jurisdiction over matters to the Illinois Chancery Court when it allowed the state court proceedings to continue. For the purposes of *Rooker-Feldman*, therefore, the parallel proceeding rule dictates that the court must consider only the Foreclosure Judgment, and not the Order Confirming Sale.

The same is not true for *res judicata*, however. As discussed below, when the court entered the Stay Relief Order, it reset the so-called "race to the courthouse" that the automatic stay otherwise prevents. *Cordova v. City of Chicago (In re Cordova)*, 668 B.R. 413, 439 (Bankr. N.D. Ill. 2025) (Barnes, J.) ("The stay preempts a 'race to the courthouse'") (quoting *Wood v. U.S. Dep't of Hous. & Urb. Dev. (In re Wood)*, 993 F.3d 245, 249 (4th Cir. 2021)). In such circumstances, if the state court enters an order dividing estate property and non-estate property before the bankruptcy court enters an order governing the treatment of the same, the bankruptcy court is bound by the state court's determination under principles of *res judicata*. Such rights are first and foremost a question of state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Thus, "[w]hile there is no jurisdictional bar to the parallel proceedings here, the law of *res judicata* (claim and issue preclusion) may be raised as a defense to further litigation once there is an order or judgment entitled to preclusive effect under the relevant law." *Zurich Am. Ins. Co. v. Superior Ct. for State of California*, 326 F.3d 816, 824 (7th Cir. 2003); *Byrd v. Homecomings Fin. Network*, 407 F. Supp. 2d 937, 941 (N.D. Ill. 2005); *Lihter v. Pierce*, Case No. 16 C 50080, 2016 WL 4771370, at *3 (N.D. Ill. Sept. 13, 2016); *Bolden v. Wells Fargo Bank, N.A.*, Case No 14 C 403, 2014 WL 6461690, at *4 (N.D. Ill. Nov. 18, 2014). The distinction here between the *Rooker-Feldman* doctrine and *res judicata* makes sense because, as is discussed in more detail below, the former occupies a "narrow ground," *Exxon*, 544 U.S. at 284 (2005), and "the two are not coextensive." *GASH Assocs. v. Vill. of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir. 1993).

For that reason, BMO is free to assert *res judicata* arising from both the Foreclosure Judgment and the later Order Confirming Sale even though the Order Confirming Sale was entered while the Adversary Proceeding was pending. The court will therefore consider *Rooker-Feldman* as it applies to the Foreclosure Judgment alone but will consider *res judicata* as it may apply to both the Foreclosure Judgment and Order Confirming Sale.

Each will be taken up, in turn.

A.      Counts II, III and IV:  The *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine is a jurisdictional rule arising out of two Supreme Court cases. *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

As the Supreme Court has recently stated, the *Rooker-Feldman* doctrine stands for the basic, uncontroversial rule that federal trial courts may not exercise appellate jurisdiction over state court judgments. *T.M. v. Univ. of Md. Med. Sys. Corp.*, Case No. 25-197, 608 U.S. ____, 2026 WL 1751823, at *2 (U.S. June 18, 2026); *see also Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 569 F.3d 667, 670 (7th Cir. 2009).

7

The doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon*, 544 U.S. at 281. The reason for the *Rooker-Feldman* doctrine is because "no matter how erroneous or unconstitutional the state court judgment may be, only the Supreme Court of the United States has jurisdiction to review it." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) (citing *Brokaw v. Weaver*, 305 F.3d 660, 664 (7th Cir. 2002)). The doctrine occupies a "narrow ground." *Exxon*, 544 U.S. at 284.

The courts have laid out four elements that, when present, will block federal jurisdiction under the *Rooker-Feldman* doctrine:

> *First*, the federal plaintiff must have been a state-court loser. *Second*, the state-court judgment must have become final before the federal proceedings began. *Third*, the state-court judgment must have caused the alleged injury underlying the federal claim. *Fourth*, the claim must invite the federal district court to review and reject the state-court judgment."

*Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 766 (7th Cir. 2024), *cert. denied,* 145 S. Ct. 1167 (2025) (emphasis in original). The doctrine, however, will "not apply to bar jurisdiction over a plaintiff's federal claim if she did not have a reasonable opportunity to raise her federal issues in the state courts." *Id.* (citations omitted); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999). Although the "reasonable opportunity" exception "is of questionable viability," this Circuit still applies it to the analysis and so it will be considered here as well. *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 607 (7th Cir. 2008).

The court will consider each of the four elements of *Gilbank*, in turn.

1.      *Element One:  The Debtor as a State-Court Loser*

As to the first element, the Debtor is unquestionably a state-court loser. The Foreclosure Judgment was entered by the Chancery Court in favor of BMO. The Debtor does not argue to the contrary, nor could he. As a result, the first element is satisfied.

2.      *Element Two:  The Finality of the Foreclosure Judgment*

As to the second, as a result of the recent *T.M. v. Univ. of Md.* case noted above, the answer is equally straightforward. Because, however, that decision only recently provided clarity to what was previously more complicated, this element merits further inquiry. It involves first considering the finality of foreclosure judgments generally and in this matter prior to the *T.M. v. Univ. of Md.* case and thereafter considering the effect of the *T.M. v. Univ. of Md.* case.

a.      Finality Prior to *T.M. v. Univ. of Md.*

Before the court is a common fact pattern seen in chapter 13 bankruptcy cases. Prior to commencing a bankruptcy case, a debtor who is unable to pay debts as they come due falls behind on home mortgage payments and the property is put into foreclosure. After having received an unfavorable judgment of foreclosure from the state court but before an order confirming the

foreclosure sale is entered, the debtor commences a bankruptcy case with the hope of collaterally attacking the foreclosure judgment before the bankruptcy court.

Prior to the *T.M. v. Univ. of Md.* decision, such a debtor's actions might have been well founded. The Seventh Circuit, solely in determining that a district court order of foreclosure entered under Illinois law in a diversity action, held that that foreclosure order was not final and appealable. *HSBC Bank USA, N.A. v. Townsend*, 793 F.3d 771, 777–78 (7th Cir. 2015); *see also EMC Mortg. Corp. v. Kemp*, 2012 IL 113419, ¶ 11 (final resolution is reached when the order confirming sale is entered); *Medrano v. Ocwen Loan Serv., LLC*, Case No. 16 C 898, 2017 WL 413614, at *3 (N.D. Ill. Jan. 31, 2017) (foreclosure judgment is not appealable until sale confirmed).

If a judgment of foreclosure is not final for appellate purposes, that would certainly call into question the finality of the foreclosure judgment for *Rooker-Feldman* purposes. *See, e.g.*, *Exxon*, 544 U.S. at 291; *Parker v. Lyons*, 757 F.3d at 705–06 (7th Cir. 2014), *overruled on other grounds by Hadzi-Tanovic v. Johnson*, 62 F.4th 394 (7th Cir. 2023). This can lead to the perception that the state court matter must be fully concluded in order for *Rooker-Feldman* to apply to the matters adjudicated therein. *Accord TruServ Corp. v. Flegels, Inc.*, 419 F.3d 584 (7th Cir. 2005) ("where 'the losing party in state court filed suit in federal court *after the state proceedings ended*'; therefore, an interlocutory ruling does not evoke the doctrine or preclude federal jurisdiction.") (emphasis in original) (quoting *Exxon*, 544 U.S. at 291); *Medrano*, 2017 WL 413614, at *4 (courts in the Seventh Circuit have "leaned on *TruServ* and found that *Rooker-Feldman* does not apply when the federal suits commenced before the state courts issued the orders confirming sale") (collecting cases).

Even prior to the *T.M. v. Univ. of Md.* decision, however, the issue was not so cut-and-dried.

State law determines the finality of a state court order. *Mehta v. Att'y Registration & Disciplinary Comm'n of the Supreme Ct. of Ill.*, 681 F.3d 885, 887 (7th Cir. 2012). Thus, even where a state court proceeding may not have concluded, a judgment can still be final for purposes of the *Rooker-Feldman* doctrine if state law treats a matter as having been finally decided at an earlier stage. The courts in the Seventh Circuit have recognized as much. *Harold v. Steel*, 773 F.3d 884, 886 (7th Cir. 2014) ("A truly interlocutory decision should not be subject to review in *any* court; review is deferred until the decision is final."); *see also Hadzi-Tanovic*, 62 F.4th at 400 (finding an interim order in a custody proceeding as part of the "continuing management" of child custody issues to be final for purposes of the *Rooker-Feldman* doctrine based on Illinois state law); *Mehta*, 681 F.3d at 887 ("Illinois law provides that an interim suspension order *is* a final judgment in the … proceeding in which it is issued.").

Courts have since relied on *Harold* in affirming the applicability of the *Rooker-Feldman* doctrine to interlocutory orders, including judgments of foreclosure. *See, e.g.*, *Carpenter v. PNC Bank, Nat. Ass'n*, 633 F. App'x 346, 348 (7th Cir. 2016); *see also Medrano*, 2017 WL 413614, at *5.

As Illinois law is the determining factor on whether a foreclosure judgment is final for the purposes of *Rooker-Feldman*, the best source of precedent on this issue is what the Illinois courts have said. In this regard, there is no ambiguity, the Supreme Court of Illinois has stated that "a judgment of foreclosure is final as to the matters it adjudicates." *Kemp*, 2012 IL 113419, ¶ 11. As a result, even though a foreclosure judgment may not be final for appellate purposes, it is final for the purposes of *Rooker-Feldman*.

9

The Foreclosure Judgment adjudicated numerous matters related to the Complaint.  In particular, it ordered that BMO's "material allegations" in its Chancery Court complaint are "true and proven," including "the evidence of indebtedness" resulting in a "valid subsisting lien" in a total amount of the Judgment Award.  Foreclosure Judgment, at ¶ 2.

The Foreclosure Judgment further determined that "service of process in each in each [sic] instance was properly made."  *Id.* at ¶ 3.  As noted above, however, this finding would not govern the outcomes here if the Debtor "did not have a reasonable opportunity to raise her federal issues in the state courts."  *Gilbank*, 111 F.4th at 766; *Long*, 182 F.3d at 558.

The reasonable opportunity exception is "carefully limited."  *Gilbank*, 111 F.4th at 778.  "[S]tate law must 'have effectively precluded' raising the issue in state court for the federal plaintiff to succeed on a 'no reasonable opportunity' argument."  *Id.* (quoting *Long*, 182 F.3d at 558–59).  There are two instances it has been found to exist by the Seventh Circuit.  The first is where the federal issues could not be heard, *id.* (discussing *Long*, 182 F.3d at 559–60), and the second is "where the plaintiff was not 'even present' at a hearing 'and was not represented … by a guardian *ad litem* or an attorney.'"  *Id.* (quoting *Brokaw*, 305 F.3d at 668).

Neither factor is evident here.  In fact, the record clearly indicates that the Debtor not only had a chance to contest the matters before the Chancery Court, but did just that.  The Debtor raised service and notice issues regarding the BMO Chancery Motions in the Motion to Vacate and the Motion for Reconsideration.  The Debtor also raised issues with how the Judgment Award amount was calculated, including the failure to credit post-petition chapter 13 plan payments.  The Debtor made these same arguments at the Chancery Hearing.  The Debtor participated in the Chancery Action process with his filings and by appearing at the Chancery Hearing where he raised the same issues as in the Complaint.  Further, the Debtor has asserted each of the foregoing in the Amended Notice of Appeal.  The Debtor therefore had a reasonable opportunity to assert the claims and was not precluded from raising the issues at any point.  *Id.*

Absent other considerations, therefore, the Foreclosure Judgment is final for the purposes of *Rooker-Feldman* on these issues.

     b.   Finality after *T.M. v. Univ. of Md.*

As just noted, absent other considerations, the Foreclosure Judgment is final for the purposes of *Rooker-Feldman* on the issues determined therein.  One such other consideration is the Amended Notice of Appeal and the effect of the Amended Notice of Appeal was directly addressed in *T.M. v. Univ. of Md.*  The immediate question before the Supreme Court therein was whether the *Rooker-Feldman* doctrine "bars suit when the state-court judgment at issue is subject to further review in state appellate proceedings."  *T.M. v. Univ. of Md.*, 2026 WL 1751823, at *3.

To not hide the ball, "[i]t does."  *Id.*

In both *Rooker* and *Feldman*, the party who lost in state court subsequently filed suit in federal court "after the state proceedings ended" to challenge the state court judgment.  *Exxon*, 544 U.S. at 291.  In both instances the federal action was commenced after the highest state court entered its judgment and the proceeding thereby ended.  *Feldman*, 460 U.S. at 462; *Rooker*, 263 U.S. at 414.

10

Until resolved by the Supreme Court in *T.M. v. Univ. of Md.*, there existed a circuit split as to whether the pendency of an appeal would render a state court judgment nonfinal for the purposes of *Rooker-Feldman*. The Fourth and Sixth Circuits applied *Rooker-Feldman* even in the face of a pending appeal. *T.M.*, 2026 WL 1751823, at *5. Other Circuits held the opposite and only applied the doctrine when the underlying state court action had "ended." *Id.* (collecting cases). The Seventh Circuit was included in this latter group of Circuits. *Parker*, 757 F.3d at 706.

That latter group of cases, including *Parker*, were directly overruled by *T.M. v. Univ. of Md.* The Supreme Court found that the petitioner's claims were barred by the *Rooker-Feldman* doctrine, even in the presence of an appeal. As the Supreme Court stated, to hold otherwise would allow "federal district courts to review state-court judgments while they are on appeal in the state-court system [and] would undermine the '[c]ooperation and comity' on which our federal system is built." *Id.* at *9 (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586 (1999)). It held that not applying *Rooker-Feldman* in such instances would effectively grant a backdoor to the federal courts to review state court decisions and therefore undermine principles on which the federal system is built. *Id.* ("Federalism principles are thus best served by continuing to apply *Rooker-Feldman* to federal cases in which plaintiffs seek review of state-court judgments, regardless of whether those judgments are final trial-court judgments or those of a State's highest court.").

Therefore, the effect of the Debtor filing the Amended Notice of Appeal in the Chancery Action has no effect on the applicability of the *Rooker-Feldman* doctrine.

The effect of *T.M. v. Univ. of Md.* is even greater, however. Taking the Supreme Court's reasoning at face value, that the ultimate finality of the state court's order is not a bar to the application of *Rooker-Feldman*, *T.M. v. Univ. of Md.* simply underscores the court's previous conclusion that an Illinois foreclosure judgment, though not final in the context of the overall litigation before the state courts, should still be subject to *Rooker-Feldman*. Even if the Illinois Supreme Court had not clearly stated that a foreclosure judgment is final as to the issues it determines, *Kemp*, 2012 IL 113419, ¶ 11, and Illinois did not provide the rule of finality for *Rooker-Feldman* purposes, *Mehta*, 681 F.3d at 887, *T.M. v. Univ. of Md.* would nonetheless mean that contrary federal law does not apply.

Accordingly, the second element set forth above, *see Gilbank*, 111 F.4th at 766, is satisfied.

3.      *Element Three: Injuries Caused by the Chancery Court's Foreclosure Judgment*

The third element set forth requires the federal action to be "complaining of an injury caused by the state-court judgment." *Exxon*, 544 U.S. at 291; *see also Harold*, 773 F.3d at 885 ("The *Rooker–Feldman* doctrine applies when the state court's judgment is the source of the injury of which plaintiffs complain in federal court."). The court must consider whether the Debtor's alleged injury is independent of the Foreclosure Judgment or arises from it.

Though once determined under an "inextricably intertwined" standard, *Sykes*, 837 F.3d at 742; *see also Andrade*, 9 F.4th 947, 950 (7th Cir. 2021), the Seventh Circuit sitting *en banc* agrees "we should no longer rely on" it because the language "has contributed to the confusion in applying the *Rooker-Feldman* doctrine." *Gilbank*, 111 F.4th at 761. Instead, the Seventh Circuit has stated that the "injury element hinges on whether the federal claim alleges an injury 'caused by the state court judgment' or 'an independent prior injury that the state court failed to remedy.'" *Id.* at 767 (quoting

*Sykes*, 837 F.3d at 742).  The Seventh Circuit further stressed that "[t]he high stakes and the possibility of errors, even egregious errors, do not affect application of the *Rooker-Feldman* doctrine." *Id.* at 768 (citations omitted).

As a result, the court must take up each relevant Count of the Complaint and determine if the injury was caused by the Foreclosure Judgment or is independent from it.

Count II asserts that the Chancery Court erred in how it calculated the Judgment Award.  It alleges the Chancery Court failed to credit post-petition chapter 13 plan payments the Debtor made in his bankruptcy case.  Consequently, the Debtor alleges the inaccurate Judgment Award in the Foreclosure Judgment is causing him injury, including the loss of his home and resulting emotional, psychological and physical hardships.  Count II therefore alleges an injury caused by the state court Foreclosure Judgment and satisfies the third element.

Counts III and IV both assert that the Foreclosure Judgment was entered in error and in violation of the Debtor's due process rights because there was a lack of notice and service of the BMO Chancery Motions.  The Debtor alleges the injury is from jurisdictional defects and errors of law, but the *Rooker-Feldman* doctrine assumes the judgment was entered in error.  *Gilbank*, 111 F.4th at 768.  As a result, such jurisdictional defects and errors of law do not defeat the application of *Rooker-Feldman*.  *Sykes*, 837 F.3d at 742 (the doctrine applies both to "procedural state court rulings as well as substantive ones").  As the Foreclosure Judgment included a finding that the Debtor had proper service and notice, the Debtor's allegations of the lack of the same clearly constitutes an alleged error caused by the entry of the Foreclosure Judgment.  Count III and Count IV both satisfy the third element.

Therefore, the Debtor in Counts II–IV complains of injuries arising from and not independent of the Foreclosure Judgment.  For those Counts, the third element required for the *Rooker-Feldman* doctrine is satisfied.

4.      *Element Four: "Review and Rejection" of the Foreclosure Judgment*

The fourth and final element of the *Rooker-Feldman* doctrine requires the state-court loser to be "inviting district court review and rejection of those judgments" entered by the state court. *Exxon*, 544 U.S. at 281.  If the injury complained of "cannot be separated from the state court judgment … the litigant must appeal through the state court system and then seek review in the United States Supreme Court by filing a writ of certiorari[.]"  *Kelley*, 548 F.3d at 607.

The Debtor is clearly seeking just that.  Throughout the Complaint, he seeks to have this court review the Chancery Court's findings and reject the Foreclosure Judgment.  Counts II, III and IV of the Complaint each seek to have this court review the findings made by the Chancery Court and to determine that the Foreclosure Judgment is incorrect, entered in error and void *ab initio*.

The Debtor both can appeal and has appealed through the state court system.  The Debtor's appeal and not this Adversary Proceeding is clearly the method of redress for these alleged injuries.

Accordingly, the fourth element set forth above, *Gilbank*, 111 F.4th at 766, is satisfied.

12

As a result, all four elements of the *Rooker-Feldman* doctrine apply to Counts II–IV and this court lacks subject matter jurisdiction over each.  The Motion to Dismiss will be granted in this regard.

B.    Counts II, III and IV:  *Res Judicata*

Though the court concludes it does not have subject matter jurisdiction in this case to hear Counts II–IV under the *Rooker-Feldman* doctrine, the uncertainty regarding its application to foreclosure judgments demands consideration of *res judicata*, as claim preclusion may still apply even if *Rooker-Feldman* does not.  *Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015).  This alternative analysis was applied by the District Court in *Medrano*, 2017 WL 413614, at *5 (analyzing both doctrines "given the uncertainty in Seventh Circuit case law"), and this court sees no reason to do differently.

*Res judicata* is not supplanted by *Rooker-Feldman*.  *Exxon*, 544 U.S. at 284 (*"Rooker–Feldman* does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.").  "[T]he two are not coextensive," *GASH*, 995 F.2d at 728, and the Supreme Court has warned that the two should not be confused.  *Exxon*, 544 U.S. at 293.

The purpose of *res judicata* is to promote judicial economy because it prevents "repetitive litigation" and the "unjust burden of relitigating essentially the same case." *Doherty v. Fed. Deposit Ins. Corp.*, 932 F.3d 978, 983 (7th Cir. 2019) (quoting *Piagentini v. Ford Motor Co.*, 387 Ill. App. 3d 887, 890 (2009)).  For that reason, it applies not only to "what was actually decided in the prior action, but also to those matters that could have been decided." *Richter v. Prairie Farms Dairy, Inc.*, 2016 Ill. 119518, ¶ 21; *Nowak v. St. Rita High Sch.*, 197 Ill. 2d 381, 389 (2001) ("When *res judicata* is established … it is conclusive not only as to every matter which *was* offered to sustain or defeat the claim or demand, but as to any other matter which *might* have been offered for that purpose.") (emphasis in original).  *Res judicata* prevents a party from taking a second bite of the apple. *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1368 (7th Cir. 1988).

Federal courts "apply the preclusion law of the state that rendered the judgment to determine whether *res judicata* controls [in the] case." *Hicks v. Midwest Transit, Inc.*, 479 F.3d 468, 471 (7th Cir. 2007) (citations omitted).  In Illinois, "a final judgment on the merits rendered by a court of competent jurisdiction acts as a bar to a subsequent suit between the parties involving the same cause of action." *Hicks*, 479 F.3d at 471 (quoting *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 302 (1998)).  Thus, the doctrine applies if the following three requirements are met: "(1) a final judgment on the merits has been entered in the first lawsuit by a court of competent jurisdiction; (2) an identity of causes of action exists; [and] (3) the parties or their privies are identical in both lawsuits." *DeLuna v. Treister*, 185 Ill. 2d 565, 572 (1999).

Even if all three requirements are met, the doctrine "will not be applied where it would be fundamentally unfair to do so." *Nowak*, 197 Ill. 2d at 390 (citations omitted).  Accordingly, there is an exception to *res judicata*, and it will not apply "if the plaintiff did not have a full and fair opportunity to litigate his claim in state court." *Licari v. City of Chicago*, 298 F.3d 664, 666–67 (7th Cir. 2002).

The court will consider each of the *DeLuna* factors, in turn.

1.  *Final Judgment*

Though all three requirements of *DeLuna* must be met for *res judicata* to apply in Illinois, the most critical is the first, that a final judgment was entered.  *Doherty*, 932 F.3d at 983.

As the Illinois Supreme Court has stated, "[a] judgment is final for appeal purposes if it determines the litigation on the merits or some definite part thereof so that, if affirmed, the only thing remaining is to proceed with the execution of the judgment."  *In re Marriage of Verdung*, 126 Ill. 2d 542, 553 (1989) (citations omitted); *Wilson v. Edward Hosp.*, 2012 Ill. 112898 (same).  As the court has noted, there is no question that an order confirming sale in a foreclosure action is a final and appealable order.  *Kemp*, 2012 IL 113419, ¶ 11; *see also Byrd*, 407 F. Supp. 2d at 941; *Lihter*, 2016 WL 4771370, at *3; *Bolden*, 2014 WL 6461690, at *4.  Accordingly, the Order Confirming Sale entered by the Chancery Court is a final judgment rendered by a court of competent jurisdiction and the first requirement of *res judicata* is satisfied.

While there is some controversy about the finality of the Foreclosure Judgment, that controversy arises only from what the federal courts have stated about the same.  *See, e.g.*, *Carpenter*, 633 F. App'x at 348; *Medrano*, 2017 WL 413614, at *5.  As noted above, Illinois law governs this issue and the Supreme Court of Illinois has stated that "a judgment of foreclosure is final as to the matters it adjudicates."  *Kemp*, 2012 IL 113419, ¶ 11.

While each is final, because the Foreclosure Judgment is subsumed into the Order Confirming Sale, to avoid the controversy, the court will therefore only consider *res judicata* as it relates to the Order Confirming Sale.  Therefore, the Order Confirming Sale entered by the Chancery Court is final for purposes of *res judicata*.

2.  *Identity of Cause of Action*

Illinois courts apply a so-called "transactional test" to determine whether an identity of cause of action exists.  *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011).  It provides that "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief."  *River Park*, 184 Ill. 2d at 311 (citing *Rodgers v. St. Mary's Hosp. of Decatur*, 149 Ill. 2d 302, 312 (1992)).  Under this test, claims are "considered parts of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction."  *Id.* The analysis for determining a cause of action is a "pragmatic" one whereby "a claim is viewed in 'factual terms.'"  *Id.* at 312 (quoting Restatement (Second) of Judgments § 24, comment a, at 197 (1982)); *Chicago Title Land Tr. Co. v. Potash Corp. of Saskatchewan Sales*, 664 F.3d 1075, 1080 (7th Cir. 2011) (same).  "Accordingly, the addition of new theories of relief in a subsequent suit arising from the same operative facts satisfies the second requirement for applying *res judicata*."  *Arlin-Golf*, 631 F.3d at 822.

To make this determination, courts in Illinois consider "the facts and conditions as they were at the time a judgment was rendered.  When new facts or conditions intervene before a second action, establishing a new basis for the claims and defenses of the parties respectfully, the issues are no longer the same, and the former judgment cannot be pleaded as a bar in a subsequent action."  *N. Illinois Med. Ctr. v. Home State Bank of Crystal Lake*, 136 Ill. App. 3d 129, 144 (1985) (citations omitted).

14

To apply the transactional test here, the "court may … take judicial notice of matters in the public record, including pleadings and orders in previous cases." *Arthur Anderson LLP v. Fed. Ins. Co.*, Case No. 06 C 1824, 2007 WL 844632, at *1 (N.D. Ill. Mar. 16, 2007) (citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *Opoka v. I.N.S.*, 94 F.3d 392, 394 (7th Cir. 1996)). Here, like in *Arthur Anderson*, the court considers the Chancery Action pleadings, Chancery Court orders and transcript from the Chancery Hearing as provided by the parties in their pleadings in the Adversary Proceeding.

Count II of the Complaint, though couched in Bankruptcy Code law, is at its core merely a challenge to the Judgment Award as calculated by the Chancery Court. Because the analysis is a "pragmatic" one, *River Park*, 184 Ill. 2d at 312, it is the essence of the claim and not its trappings that determines this factor. The Debtor asks this court to re-determine the secured claim based on the Chancery Court's alleged failure to credit payments made by the Debtor in the bankruptcy case when calculating the Judgment Award. This argument was presented to the Chancery Court by the Debtor at the Chancery Hearing and in the Motion for Reconsideration. The facts are the same now as they were when the Judgment Award was previously determined. The second requirement of *res judicata* is satisfied with respect to Count II.

Counts III and IV of the Complaint assert different theories of relief, but the claims are based on a single group of operative facts and arise out of the same transaction. *River Park*, 184 Ill. 2d at 311. These Counts allege issues of notice and service with respect to the BMO Chancery Motions. The Debtor made these arguments in the Motion to Vacate and the subsequent Motion for Reconsideration. The Chancery Court discussed these issues at the Chancery Hearing and found there was proper service and notice. The Order Confirming Sale makes specific reference to these allegations and sets them aside, finding that the Debtor received notice of the relevant motions and the hearing date on which it entered the Foreclosure Judgment and the other related orders. Order Confirming Sale, at p. 31("[Debtor] received notice of the August 1st court date and failed to appear. To date, [Debtor] has not provided any reasonable excuse for his absence"). No facts or conditions have changed since the Order Confirming Sale was entered.

Therefore, the second requirement of *res judicata* is satisfied with respect to Counts II, III and IV.

### 3. *Identical Parties or Privies*

Finally, the third requirement for *res judicata* in *DeLuna* is satisfied because there is an identity of parties and privies between the two actions. Neither party here disputes that the Chancery Action and the Adversary Proceeding involve identical parties. Nor could they. The third requirement necessary for *res judicata* is satisfied.

As a result, all three requirements of *res judicata* are met and apply to the Debtor's Complaint with respect to Counts II, III and IV, subject to two remaining questions.

### 4. *Full and Fair Opportunity to Litigate*

The first remaining question is whether the Debtor had a full and fair opportunity to litigate the claims in the Chancery Action. *Licari*, 298 F.3d at 666–67. *Res judicata* will not apply "if the plaintiff did not have a full and fair opportunity to litigate his claim in state court. A plaintiff is

15

afforded a full and fair opportunity to litigate his claims so long as the state court proceedings complied with the minimum procedural requirements of the Due Process Clause." *Id.* (citing *Pliska v. City of Stevens Point, Wis.*, 823 F.2d 1168, 1172 (7th Cir. 1987)).

There can be little question that the Debtor had a full and fair opportunity to litigate his claims and the evidence attached to the Debtor's Complaint contradict any allegations that his due process was violated. There is simply no basis for the Debtor to claim he did not have an opportunity to litigate that misconduct fully. If he failed to raise an issue, that challenges only his litigation strategy, not the fairness of the process. The Debtor had every opportunity to present his theories to the Chancery Court and now, on appeal, he has a forum to challenge that process and the results.

5. *The Effect of a Timely Filed Notice of Appeal*

The second remaining question is what effect, if any, the filing of the Notice of Appeal has on any of the foregoing. Prior to the recent Supreme Court ruling in *T.M. v. Univ. of Md.*, there was not a clear answer.

As the Seventh Circuit put it: "To be blunt, we have no idea what the law of Illinois is on the question whether a pending appeal destroys the claim preclusive effect of a judgment." *Rogers v. Desiderio*, 58 F.3d 299, 302 (7th Cir. 1995). Under Illinois law, "finality requires that the potential for appellate review must have been exhausted." *Ballweg v. City of Springfield*, 114 Ill. 2d 107, 113 (1986). *Ballweg* was in the context of collateral estoppel, but some courts have extended the same reasoning to *res judicata*. *Rogers*, 58 F.3d at 302 (collecting cases). There is an intra-court conflict as to whether a timely filed appeal suspends the *res judicata* effect of a final judgment. *Rogers*, 58 F.3d at 302.

As one court explained the conflict:

> This confusion arises from two conflicting Illinois supreme court decisions: *State Life Insurance Co. v. Board of Education*, 81 N.E.2d 877, 880 (Ill. 1948) and *Ballweg v. City of Springfield*, 499 N.E.2d 1373, 1375 (Ill. 1986). In *State Life*, the Ilinois [sic] Supreme Court held that the decision of the court of first instance retains its preclusive effect, regardless of whether or not the losing party appeals the decision. 81 N.E.2d at 880. Subsequently, in *Ballweg*, the court held that, for the purposes of collateral estoppel, "finality required that the potential for appellate review must have been exhausted." 499 N.E.2d at 1375. While *Ballweg* is limited to collateral estoppel, some Illinois appellate courts have extended *Ballweg* to claims of preclusion. *See, e.g., Luckett v. Human Rights Comm'n*, 569 N.E.2d 6, 10-11 (Ill. App. Ct. 1989); *Pelon v. Wall*, 634 N.E.2d 385, 388 (Ill. App. Ct. 1994). Other Illinois appellate courts, however, continue to follow *State Life*, which, as a result, has created an "intra-court conflict." *Rogers*, 58 F.3d at 302 (*citing Illinois Founders Ins. Co. v. Guidish*, 618 N.E.2d 436, 440 (Ill. App. Ct. 1993)).

*Nash v. Lawler*, Case No. 06 C 4511, 2007 WL 9813605, at *4 (N.D. Ill. Oct. 29, 2007); *see also Rogers*, 58 F.3d at 301–02 (discussing the same). The intra-court conflict is perhaps why the Seventh Circuit in *Rogers* ultimately remanded with instructions to stay all further proceedings pending the outcome of the state court appeal, "and then to proceed as appropriate in light of the final disposition of the state-court action." *Rogers*, 58 F.3d at 302.

16

In similar instances where a party timely files an appeal of a final order, "courts in this district frequently stay federal actions where state court actions that are already far along but have not reached final judgment and completed the appellate process, could potentially have *res judicata* effect on the federal action." *Tratar v. Bank of Am., N.A.*, Case No. 15 C 5844, 2016 WL 4945059, at *3 (N.D. Ill. Sept. 16, 2016) (collecting cases); *see also Loventhal v. Select Portfolio Servicing, Inc.*, Case No. 18-CV-3435, 2019 WL 2435851, at *2 (N.D. Ill. June 11, 2019) (same).

While the Adversary Proceeding could be stayed to avoid duplicative litigation with the Chancery Court, in entering the Stay Relief Order, this court already made that determination.

Further, while the Seventh Circuit is correct that this ultimately has to do with the finality of state court orders under Illinois law, the court sees no reason why the traditional analysis of finality would not apply. Like federal law, Illinois law provides a mechanism to stay a judgment pending appeal. *See* Fed. R. Civ. P. 62; Ill. Sup. Ct. R. 305. Absent such a stay, the court sees no reason to treat the Order Confirming Sale as less than final simply because a Notice of Appeal has been filed. *Accord Hurley v. Gaertner (In re Hurley)*, 158 B.R. 115, 123 (N.D. Ill. 1993) ("Absent a stay, [the prevailing party] had a right to treat the … court decision as final ….").

That aside, the court is of the view that *T.M. v. Univ. of Md.* governs this consideration. While Illinois may provide the rule of finality generally, as the Supreme Court has made clear, federal law provides the rule of finality for the purposes of *Rooker-Feldman*. *T.M. v. Univ. of Md.*, 2026 WL 1751823, at *10. As *Rooker-Feldman* is, in fact, a narrower principal than *res judicata*, the court sees no reason why the same would not apply to *res judicata*.

C.     The Remaining Counts

1.     *Count I*

As noted above, Count I is uniquely a bankruptcy cause of action. As such, it is not subject to the *Rooker-Feldman* doctrine nor barred by *res judicata*.

Count I, is however, ill-conceived. The Debtor alleges in Count I that BMO's attempt to proceed with the sale of the Property is an unauthorized act against property of the estate because he has equity in the Property, and such equity is property of the estate. Compl., at p. 8.[6]

The Debtor is correct that the Property is property of the Debtor's bankruptcy estate. Property of the estate is defined to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the estate is to be determined expansively.

> As Congress has stated, "[t]he scope of this paragraph is broad. It includes all kinds of property, including tangible or intangible property, causes of action, and all other forms of property currently specified ...." H.R. Rep. No. 595, 95th Cong., 1st Sess.,

---

[6]     Count I is titled "Willful Violation and Enforcement of the Automatic Stay (11 U.S.C. § 362(a)(4))." Compl., at p. 8. While stated in terms of a "willful violation," the Debtor makes no reference to section 362(k) of the Bankruptcy Code (the provision governing damages from willful stay violations) other than in the title of Count I and in his Table of Authorities. As a result, the court gives no consideration to the allegation of willfulness and considers only here whether a stay violation can be properly claimed.

367 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6323; S. Rep. No. 989, 95th Cong., 2nd Sess., 82 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5868. As the Seventh Circuit has noted, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of [section] 541." *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996) (internal quotation and citation omitted).

*Cordova v. City of Chicago* (*In re Cordova*), 635 B.R. 321, 337 (Bankr. N.D. Ill. 2021) (Barnes, J.).

Further, as noted above, "[t]he district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction … of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate …." 28 U.S.C. § 1334(e).

Had BMO not obtained the Stay Relief Order, there is little question that the entry of the Order Confirming Sale would have violated the automatic stay, 11 U.S.C. § 362(a)(1)–(3), and would be therefore void. *Middle Tennessee News Co. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir. 2001) ("Actions taken in violation of an automatic stay ordinarily are void.").

The Adversary Proceeding must be based on what actually occurred, however, and not what might have happened. BMO did receive relief from stay. Stay Relief Order. As such, the Chancery Court was not stayed from proceeding. True, as noted above, a stay relief order is procedural and not jurisdictional. As such, this court's exclusive jurisdiction was not ceded to the Chancery Court by the Stay Relief Order. Still, section 1334(e) says nothing about what court must determine what is property of a debtor or of the estate.

While this might seem to present a conundrum, in actual practice, it does not. As the lifting of the stay allows the state court to proceed, the state court can do so. It is free to proceed to a determination of a debtor's or the estate's state law interests in the property. *Butner*, 440 U.S. at 55. To hold otherwise would make stay relief meaningless.

True, if what results is property of a debtor or the estate remaining after a secured creditor's rights of foreclosure are adjudicated, such rights remain within the exclusive jurisdiction of the court. Exercising jurisdiction over either would violate this court's jurisdiction, but not the stay as stay relief was given. But it is premature to determine whether there has been a violation of this court's jurisdiction. What ordinarily happens is that any equity resulting after a foreclosure is returned to the estate. The court can only presume that that will happen here. If there is any question, BMO is free to return to this court to ask that it confirm the results of the Order Confirming Sale. But no stay violation has occurred and Count I is quite simply infirm as a result.

     2.   *Count V*

Count V seeks injunctive relief which is a remedy, not a separate distinct cause of action. *Noah v. Enesco Corp.*, 911 F. Supp. 305, 307 (N.D. Ill. 1995); *People ex rel. Madigan v. J.T. Einoder, Inc.*, 2013 IL App (1st) 113498, ¶ 66, 2 N.E.3d 1097, 1111–12, *aff'd in part, rev'd in part,* 2015 IL 117193, 28 N.E.3d 758 ("An injunction is only a remedy for an underlying cause of action and is not a cause of action in itself."). The Debtor may be entitled to the remedies sought in Count V if he was to prevail on the previous Counts. As discussed, he cannot. So, while pled as a separate count, in reality it seeks relief based on the previously dismissed counts. As such, it is a claim upon which relief cannot be granted. It is thereby moot. *Watkins v. U.S. Dist. Ct. for the Cent. Dist. of Ill.*, 37 F.4th

18

453, 457 (7th Cir. 2022) (A claim becomes moot "when it is impossible for a court to grant any effectual relief.") (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013); *see also Trinity 83 Dev., LLC v. ColFin Midwest Funding, LLC*, 917 F.3d 599, 601 (7th Cir. 2019) ("Mootness is a constitutional doctrine designed to avoid the issuance of advisory opinions.").

Further, Count V is simply a backdoor attempt by the Debtor to avoid the consequences of the Stay Relief Order. The remedy Count V seeks is in essence an attempt to reinstate the stay. The Debtor seeks to have the court stay the Chancery Action as if the Stay Relief Order were never entered. The appropriateness of lifting that stay was determined and ruled on more than eight months ago. The Debtor has failed to demonstrate why that ruling should be reconsidered here.

As a result, Count V is not well taken and fails.

CONCLUSION

For the reasons stated above, judgment will be entered in favor of BMO on the Motion to Dismiss and the Complaint will be dismissed. Counts I and V will be dismissed without prejudice. Counts II, III and IV will be dismissed with prejudice for lack of jurisdiction.

As this dismisses all Counts of the Complaint, that judgment will conclude the Adversary Proceeding.

Dated:   July 23, 2026                ENTERED:

_____
Judge Timothy A. Barnes
United States Bankruptcy Court

19